**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID M. LUCAS and ERIC L. SALERNO,<br><br>  Plaintiffs,<br><br>vs.<br><br>JOS. A. BANK CLOTHIERS, INC.,<br><br>  Defendant. | CASE NO. 14-cv-1631-LAB (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART JOS. A. BANK'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

David Lucas and Eric Salerno accuse Jos. A. Bank Clothiers, Inc. of holding perpetual sales—continually misrepresenting that its merchandise is being offered at a discount from an inflated "regular price," which it never offers. They claim this violates California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq.*, and Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, *et seq.* Jos. A. Bank has moved for judgment on the pleadings. (Docket no. 15.)

**I.    Factual Allegations**

Jos. A. Bank is a retailer that operates a national chain of clothing stores. Lucas and Salerno purchased several suits from Jos. A. Bank, and allege that they relied on deceptive advertisements in deciding to make the purchases. For each of Lucas' purchases, he purchased one suit at a purported "regular price," and received two additional suits for "free."

Salerno's purchase was advertised as the "lowest price of the year"—$197 for the first suit and $47 for the second suit. Plaintiffs contend that Jos. A. Bank misrepresents the "regular prices" of its clothing, they relied on the misrepresentations when they made their purchases, and, as a result, they paid more for Jos. A. Bank's products than they otherwise would have. They make the following allegations about the alleged misrepresentation, reliance, and inducement to purchase at an increased price:

*Misrepresentation*

> Jos. A. Bank's "buy one get one [or more] free" suit offers and other similar promotions require consumers to buy one "regular" price suit to get one or more free item of Jos. A. Bank men's apparel. But the "regular" prices are a sham.

> [T]he referenced "regular price" is, in each instance, fabricated, inflated and not representative of Jos. A. Bank's true former price, within the preceding three months, for its men's suits and other apparel. To the contrary, Jos. A. Bank's former prices are a price no consumer has actually ever paid for a Jos. A. Bank suit not in connection with some sale or discount.

> Jos. A. Bank artificially sets the false reference prices to deliberately create false impressions among customers regarding the products' values and the bargains that customers will receive if they purchase the products.

> The deceptive "sales," which are supposedly based on discounts from former prices, are in actuality perpetual. Jos. A. Bank suits, sportcoats, and dress pants are on "sale" 100% of the time.

*Reliance*

> [P]urchasers, including Plaintiffs, have reasonably perceived that they are receiving valuable price reductions or bargains regarding their purchase of men's suits, sportcoats, or dress pants. This perception has induced reasonable purchasers, including Plaintiffs, to buy such products from Jos. A. Bank at prices set by Jos. A. Bank and to refrain from shopping for the same or similar products from competitors of Jos. A. Bank.

> Plaintiff Salerno was induced by Jos. A. Bank's advertising and marketing into believing that he was receiving an excellent value by purchasing two suits for a total of $244 that had a former or "regular price" of $595 each. Plaintiff Lucas was similarly induced to make his purchases because Jos. A. Bank's advertising led him to believe he was getting a great bargain-three suits with a former price of $895 for only $895 total in the first instance and the same in each subsequent instance.

> In fact, the reason both Plaintiffs entered into the transaction with Jos. A. Bank was to receive high quality men's apparel at a price much lower than that typically charged for such merchandise.

*Inducement to purchase at an increase price*

> [Plaintiffs] would not have otherwise purchased these suits, or would not have purchased these suits for the price [they] did, absent Jos. A. Bank's false former price advertising and [were] damaged thereby.

> These false reference prices increase the demand for the products, which also increases the prices that [Jos. A. Bank] charges for the products.

> Plaintiffs . . . did not receive products which had the value [Jos. A. Bank] promised those products would have, were deprived of the benefit of their bargained-for exchanges, and suffered damages in an amount to be determined at trial.

> Jos. A. Bank, in advertising a completely inaccurate and inflated former retail price . . . intentionally misled [Plaintiffs] into . . . paying the prices set by Jos. A. Bank for such items.

The FAC alleges four causes of action: (1) violation of the unfair prong of the UCL; (2) violation of the fraudulent prong of the UCL; (3) violation of the unlawful prong of the UCL; and (4) violation of the CLRA. Plaintiffs seek restitution and injunctive relief for the alleged UCL violations and injunctive relief for the alleged CLRA violations. They seek to bring their claims on behalf of themselves and a plaintiff class defined as

> [a]ll persons who, while in the state of California and within four years of the filing of this Complaint (the "Class Period"), purchased a suit, dress pants and/or sportcoats/suit jackets from Jos. A. Bank, where the purchase price of the item was for a percentage or discount off an advertised former price, or where the purchase was for a suit, dress pants and/or sportcoat/suit jacket based on a former price in connection with an offer of at least one other "free" item of Jos. A. Bank apparel.

Jos. A. Bank contends that the Court should dismiss the FAC because Plaintiffs fail to establish entitlement to a remedy.

**II.   Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation omitted). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Judgment on the pleadings should be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Mere "conclusory allegations of law and unwarranted inferences are insufficient" to defeat a motion for judgment on the pleadings. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**III.   Discussion**

Jos. A. Bank contends that the Court should dismiss the FAC for failure to establish entitlement to either remedy that is available for Plaintiffs' UCL and CLRA claims. First, Jos. A. Bank argues that Plaintiffs fail to state a claim for restitution because the FAC doesn't sufficiently allege that the amount Plaintiffs paid for Jos. A. Bank merchandise exceeds the value of the merchandise. Second, it claims Plaintiffs lack standing to seek injunctive relief because they're now aware of Jos. A. Bank's alleged pricing practices, and therefore unlikely to be harmed by them in the future.

**A.   Entitlement to Restitution**

Jos. A. Bank argues that Plaintiffs' request for restitution under the UCL "fails because the FAC alleges no facts showing that the amount they paid [Jos. A. Bank] exceeds the actual value of what they received."

The FAC alleges that Jos. A. Bank's misrepresentations increased demand for their products, resulting in an increase in prices. It also alleges that, but for the alleged misrepresentations, Plaintiffs wouldn't have purchased Jos. A. Bank's products at the prices

- 4 -

they paid. It's unclear at this point whether Plaintiffs will be able to establish any quantifiable restitutionary damages. But, accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most favorable to Plaintiffs, it's plausible that the amount Plaintiffs paid Jos. A. Bank exceeds the value of the what they received. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532–33 (N.D. Cal. 2012) (denying defendants' motion for summary judgment to give plaintiffs an opportunity to support their claims for restitution with evidence); *cf. Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (explaining, in the statutory standing context, that a consumer suffers economic injury when he "purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation"). If Plaintiffs cannot support their allegations with evidence, a different result may be necessary at the summary judgment stage.

### B.    Article III Standing for Injunctive Relief

Jos. A. Bank challenges Plaintiffs' Article III Standing to seek injunctive relief. It argues "[g]iven that plaintiffs are now aware of [Jos. A. Bank]'s alleged pricing practices, they lack standing to seek injunctive relief as they are not likely to be harmed by those practices in the future."

To establish standing, Plaintiffs must show (1) an injury in fact; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (brackets omitted). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Injury to unnamed members of the proposed class doesn't establish standing. *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 884 (9th Cir. 2001).

/ /

### 1.     Plaintiffs' Public Policy Argument

Plaintiffs contend that they have standing to seek injunctive relief. They argue that, if knowledge of deceptive advertising strips a consumer of standing to seek an injunction, no plaintiff could ever have standing to seek injunctive relief. The Court finds some support for this argument. *See, e.g., Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing.").

But, "[t]he assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982) (first brackets original). Article III's mandate can't be displaced by a policy preference or the text of a statute. *Delarosa v. Boiron, Inc.*, 2012 WL 8716658, at *5 (C.D. Cal. Dec. 28, 2012) ("To the extent that Henderson and other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate."); *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). Plaintiffs chose to file their case in federal court, and are therefore bound by Article III's mandate. The Court declines to adopt Plaintiffs' public policy carve out.

### 2.     Plaintiffs' Intent to Purchase Jos. A. Bank Products in the Future

Plaintiffs attempt to establish Article III Standing by alleging that they "would purchase Jos. A. Bank products in the future, if product labels and marketing promotions accurately reflect 'former' prices and discounts." Some courts would find this sufficient to establish standing, reasoning that plaintiffs who are aware of a defendant's misrepresentations can still be harmed, because they can't rely on the representations. *See, e.g., Ries*, 287 F.R.D. at 533 ("Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at

the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress.").

I decline to adopt this approach. An interest in purchasing a product in the future, without more, isn't sufficient to establish standing if the plaintiffs are not "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation and emphasis omitted). "[A] plaintiff may not manufacture standing for injunctive relief simply by expressing an intent to purchase the challenged product in the future." *Rahman v. Mott's LLP*, 2014 WL 5282106, at *6 (N.D. Cal. Oct. 15, 2014). "[M]erely feeling that one cannot trust defendant's future representations is not sufficient harm to confer standing for injunctive relief." *Id.*

### 3. Threat to Plaintiffs of Repeated Injury

Where state-created interests are at issue, federal courts look to state law to define the "injury" a plaintiff may assert to meet Article III requirements. *Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1039 (9th Cir. 2006) ("When the legislature is the source of the purportedly violated legal obligation, we look to the statute to define the injury." (quotation omitted)). In this case, the alleged injury is defined by the UCL and the CLRA. Under those statutes, a plaintiff must prove reliance on the misleading statements, and a resulting injury. *Rahman*, 2014 WL 5282106, at *6; *see also Kane v. Chobani, Inc.*, 973 F.Supp.2d 1120, 1138 (N.D. Cal. 2014) ("Plaintiffs must allege that they relied on Defendant's alleged misrepresentations in order to demonstrate standing under [California's False Advertising Law], CLRA, and the UCL."). Thus, Plaintiffs only have standing to seek an injunction if they show there's a realistic threat that, in the future, they will rely on Jos. A. Bank's allegedly misleading pricing practices to their detriment. They have not made such a showing.

Plaintiffs allege that "[t]he deceptive 'sales,' which are supposedly based on discounts from former prices, are in actuality perpetual" and "Jos. A. Bank suits, sportcoats, and dress pants are on 'sale' 100% of the time." Thus, if Plaintiffs consider purchasing Jos. A. Bank suits, sportcoats, and dress pants in the future, they do so with the knowledge that the

"former prices" are inflated "100% of the time."  They know they can always disregard Jos. A. Bank's inflated "former prices," and they are left with the same information that they'd have if the Court entered the requested injunction: the merchandise and the offered price. Plaintiffs are able to evaluate Jos. A. Bank's suits, sportcoats, and dress pants against the offered price, and a choice to purchase isn't induced by the exigency of an alleged sham "sale."  Thus, Plaintiffs haven't alleged an injury that's curable by an injunction.

This doesn't mean that misled customers are deprived of the opportunity for redress. Even if Plaintiffs can't allege "a real and immediate threat of repeated injury," *Lujan*, 504 U.S. at 592, they remain able to seek restitution for violations of California's consumer protection laws.  And, "[i]f this Court lacks jurisdiction to enjoin Defendant[] or give declaratory relief, consumers in Plaintiff[s'] position may yet be able to split their claim and seek injunctive relief in state court."  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951–52 (S.D. Cal. 2007).  Several law enforcement agencies, including California county district attorneys and the California Attorney General, also have the authority to bring UCL claims.  Cal. Bus. & Prof. Code § 17204.

**IV.   Conclusion**

Jos. A. Bank's motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**.  The FAC sufficiently states a claim for restitution, but doesn't establish Plaintiffs' Article III Standing to seek injunctive relief.  If Plaintiffs think they can successfully amend their complaint, they must seek leave by *ex parte* motion no later than June 8, 2015. Their proposed second amended complaint must be attached as an exhibit to the motion. If they file such a motion, Jos. A. Bank shall have until June 22, 2015 to oppose it.  No reply should be filed unless leave is obtained in advance.

**IT IS SO ORDERED**.

DATED: May 8, 2015

**HONORABLE LARRY ALAN BURNS**
United States District Judge